IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| JIMMY DEAN BALENTINE, <br> Register No. 516421, <br>           Plaintiff, <br> v. <br> BRUCE SHOCKLEY, et al., <br>           Defendants. | No. 04-4012-CV-C-NKL |

## ORDER

On August 30, 2005, defendants filed a motion for summary judgment. Defendants argue that plaintiff's claims of excessive use of force are delusional and inconsistent with all of the physical evidence and that no reasonable jury could possibly believe them. Defendants argue they are, thus, entitled to judgment as a matter of law.

On October 3, 2005, plaintiff filed suggestions in opposition to defendants' motion for summary judgment. Plaintiff states that on December 18, 2000, while incarcerated at Jefferson City Correctional Center (JCCC), Department of Corrections defendants Shockley and Schmutz walked him to the basement of Housing Unit 3-D, and with the assistance of defendant Reed, held him down on a table, placed handcuffs on his wrists and ankles, and then placed an electrical wire on his fingers. Plaintiff states that with the use of a hand-held electric taser device, an electrical-type current was run through the wires for approximately one to two minutes on each hand, causing him to suffer unbearable pain, including the feeling of a lot of heat. Plaintiff states the taser device was subsequently used on the handcuffs that had been placed on his ankles for approximately two to three minutes, again causing pain and heat. Plaintiff states the handcuffs were so hot that they eventually melted off. Plaintiff states the taser device was also used to heat and cut off the handcuffs placed on his wrists.

Plaintiff states there is a genuine issue of material fact as to his claims of excessive use of force by defendants, and any determinations as to his credibility are to be made by a jury,

and not pursuant to a motion for summary judgment. Although plaintiff admits he was suffering from bouts of mental illness before and after the attack, and during the time he was drafting his complaint, he states he was not experiencing mental problems on December 18, 2000, the date of the attack, and that his past mental illness does not affect his memory of the attack.

## I. *Summary Judgment Standard*

Fed. R. Civ. P. 56© requires "the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden on the party moving for summary judgment "is only to demonstrate . . . that the record does not disclose a genuine dispute on a material fact." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-Op.*, 838 F.2d 268, 273 (8th Cir. 1988).

Once the moving party has done so, the burden shifts to the nonmoving party to go beyond his pleadings and show, by affidavit or by "depositions, answers to interrogatories, and admissions on file," that there is a genuine issue of fact to be resolved at trial. *Celotex*, 477 U.S. at 323. Evidence of a disputed factual issue which is merely colorable or not significantly probative, however, will not prevent entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

Summary judgment, however, "is an extreme remedy, to be granted only if no genuine issue exists as to any material fact." *Hass v. Weiner*, 765 F.2d 123, 124 (8th Cir. 1985). In ruling on a motion for summary judgment, this court must view all facts in a light most favorable to the nonmoving party, and that party must receive the benefit of all reasonable inferences drawn from the facts. *Robinson v. Monaghan*, 864 F.2d 622, 624 (8th Cir. 1989).

If "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," the court must grant summary judgment. Fed. R. Civ. P. 56.

2

Case 2:04-cv-04012-NKL   Document 68   Filed 12/07/05   Page 2 of 5

## II.     *Discussion*

Defendants concede there are factual disputes, but argue that because the plaintiff's factual assertions are delusional and the result of plaintiff's mental illness, no reasonable person would believe them, and thus, no reasonable jury could return a verdict in favor of plaintiff.

"[T]estimony can and should be rejected without a trial if, in the circumstances, no reasonable person would believe it." *Seshadri v. Kasraian*, 130 F.3d 798, 802 (7th Cir. 1997); *See also Anderson*, 106 S. Ct. at 2510-12. At summary judgment, a court must make a determination as to whether there is any evidence upon which a jury could properly proceed to find a verdict for the nonmoving party. *Anderson*, 106 S. Ct. at 2511   The court is not required to submit a question to the jury merely because some evidence has been introduced by the party having the burden of proof.  *Id.*  Evidence that is not significantly probative will not justify a trial.  *Seshadri*, 130 F.3d at 804 (citing *Anderson*, 106 S. Ct. at 2510-11).  "[A] motion for summary judgment should be granted when the record is such that if it were the record at trial, no reasonably jury could find for the party opposing the motion."  *Id.*

Upon review, for the reasons set forth below, the court finds that no reasonable jury would believe plaintiff's claims, and thus, could not find in favor of plaintiff at trial.

First, plaintiff's allegations that handcuffs were melted off of his wrists and ankles with a hand-held taser device are not supported by any physical or other evidence beyond plaintiff's own assertions, and appear to be physically impossible.  If an electrical taser was used by defendants to heat up the handcuffs plaintiff was wearing on his wrists and ankles to such a high temperature as to cause them to melt off, it would be physically impossible for plaintiff not to suffer severe burns and scaring from such intense heat.  The undisputed medical record reflects however, that two days after the alleged incident, on December 20, 2000, plaintiff filled out a medical service request form in which his chief complaint was a head and chest cold.  Plaintiff made no mention of any injury or problems with his wrists or ankles.  It was not until approximately two months after the alleged incident that plaintiff began to make complaints of problems with his wrists, and such complaints were not supported by objective evidence.  Plaintiff's medical records reflect no indication that plaintiff has suffered from any

3

type of injury to his wrists or ankles. The X-rays taken of plaintiff's ankles and wrists show no injury.

Plaintiff has also failed to provide any evidence disputing the statements contained in the affidavit of JCCC Superintendent David Dormire providing that since 1991 to the present, JCCC has not had tasers, nor have correctional officers carried tasers. Plaintiff has come forward with no evidence that there was any type of device within the prison capable of melting handcuffs off of a person.

Therefore, the court finds plaintiff has failed to come forward with any plausible evidence to support his claims of excessive force.

Secondly, the court finds that although a mentally impaired person is not prevented from bringing suit for excessive use of force; plaintiff's mental capacity, in the instant case, is relevant and admissible at trial in support of defendants' position that plaintiff's claims are delusional. Plaintiff's deposition testimony provides that he has a mental illness and suffers from delusions. Plaintiff describes his mental illness as episodes where he goes "tripping," and gets "just sort of paranoid," where "you start feeling afraid or like people will get you or stuff like that." (Doc. 62, Defendants' Motion for Summary Judgment, Exh. 1-A, Deposition of Jimmy Balentine, pg. 121.) Plaintiff states he was taken off his psychotropic medication in September 2000, just prior to the alleged incident, and that he may have been having delusions, including visions of things that were not there, during the month of December 2000. Plaintiff further admits to being mentally ill just a few weeks after the alleged incident when he was put on a suicide watch, on January 7, 2001. Plaintiff also states that at the time he prepared the exhibits to his complaint, he was suffering from mental illness, and now knows some of the statements he made on his exhibits are not true. For example, plaintiff states that statements contained on Exhibit B to his complaint which state that he told the guards on September 18, 2000, that he was hearing voices and that "psycho" was trying to force him into P.C. because he wouldn't take his own life, were the result of his mental illness and are not true. Plaintiff further states that his statement written on Exhibit C of his complaint that "I'm having a hell-of-a problem trying to write and spell because this machine they have on me causes my eyes to blare and they can hold my thoughts so I can't spell too

4

good," as well as his statement on Exhibit G of his complaint, which states "when Doctor Pallion removed 25 teeth out of my mouth after putting me under, placed a computer chip (microphone and receiver device) in my upper gums in the bone structure and something in my ear or ears[;] [t]his device or computer chip allows the guards and psychologist to talk into this device in my face and ears," were the result of delusional problems he was having related to his mental illness and are not true. Plaintiff states in his deposition testimony that his mental illness causes him to become delusional and paranoid, resulting in his believing things are happening when they are not.

Although plaintiff argues he was not suffering from mental illness on December 18, 2000, his own assertions are not sufficiently probative evidence to counter the evidence of apparent physical impossibility of his claims in conjunction with the evidence that he was suffering from delusions around the time of the alleged torture. The court finds that no reasonable jury would believe plaintiff's claims, and therefore, could not find on behalf of plaintiff at trial. Accordingly, the court finds that there is no genuine issue for trial and, as a matter of law, defendants are entitled to summary judgment.

IT IS, THEREFORE, ORDERED that defendants' motion for summary judgment is granted and plaintiff's claims are dismissed [62].

s/ Nanette K. Laughrey

NANETTE K. LAUGHREY
United States District Judge

Dated:  December 7, 2005
Jefferson City, Missouri